ORIGINAL

Wenjiu Liu

4441 Rice Street , #3014

Lihue, HI 96766

Tel. No: 650-319-5680

profjerryliu@outlook.com

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUN 13 2022

at 10 o'clock and 55 min. a M
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WENJIU LIU | ) CV22 00269 LEK WRP |
| Plaintiff | ) COMPLAINT;<br>) DEMAND FOR JURY TRIAL;<br>) CERTIFICATE OF SERVICE |
| VS | ) |
| COUNTY OF KAUAI,<br>KAUAI POLICE DEPARTMENT,<br>KAUAI OFFICE OF THE PROSECUTING ATTORNEY,<br>HIRO SHIMADA, TODD G. RAYBUCK,<br>SCOTT P. WILLIAMSON, CHRISTIAN JENKINS,<br>GINNY PIA, DAVID C. LOOS, | ) |
| Defendants | ) |

COMPLAINT

Plaintiff, JERRY WENJIU LIU, files for Complaint against the Defendants in this matter, states and avers as follows:

**PARTIES**

1. Plaintiff Jerry Wenjiu Liu ("Liu" or "Plaintiff") has lived in Kauai, Hawaii since November 4, 2020 and is expected to live in Kauai, Hawaii for the foreseeable future.

2. Defendant County of Kauai ("County") is a municipal corporation, which has the power to sue and be sued, and is a political subdivision of the State of Hawaii.

3. Defendant Kauai Police Department ("KPD") is an agency and entity of Defendant County of Kauai.

4. Defendant Kauai Office of the Prosecuting Attorney ("KOPA") is an agency and entity of Defendant County of Kauai. KOPA is physically located in the same building of KPD; its office is on the same floor of KPD Chief's Office.

5. Defendant Todd G Raybuck ("Chief Raybuck") is a citizen and resident of the State of Hawaii, and is the Police Chief of the Kauai Police Department at relevant times for this action.

6. Defendant Scott P. Williamson ("Williamson") is a citizen and resident of the State of Hawaii. Williamson was a member of KPD's Office of Professional Standards ("KPD-OPS") at relevant times for this action till July 2021.

7. Defendant Christian Jenkins ("Jenkins") is a citizen and resident of the State of Hawaii. Jenkins is a member of KPD's Office of Professional Standards ("KPD-OPS") at relevant times for this action.

8. Defendant Ginny Pia ("Pia") is a citizen and resident of the State of Hawaii. Pia is a member of KPD's Office of Professional Standards ("KPD-OPS") at relevant times for this action.

9. Defendant David C. Loos ("Loos") is a citizen and resident of the State of Hawaii. Loos is a Deputy Prosecuting Attorney at Kauai Office of the Prosecuting Attorney at relevant times for this action.

10. At all times relevant to this Complaint, Defendants were acting within the course and scope of their employment with the County of Kauai.

11. At all times relevant to this Complaint, Defendants were acting under color of state law.

12. This Complaint is brought against Defendants Hiro Shimada, Todd G Raybuck, Scott P. Williamson, Christian Jenkins, Ginny Pia , David C. Loos in their official and individual capacities.

## JURISDICTION AND VENUE

13. All matters set forth in this Complaint arose in the State of Hawai'i, County of Kauai.

14. This Court has jurisdiction over the federal claims in this action pursuant to 28 U.S.C. §§ 1331 & 1343, 42 U.S.C. §§ 1983, 1985 & 1988, as well as the First and Fourteenth Amendments of the Constitution of the United States. This Court has jurisdiction over what would otherwise be state law claims pursuant to 28 U.S.C. § 1367. Those state law claims are so related to the claims in the action within the original jurisdiction of this Court, that they form part of the same case or controversy under Article III of the United States Constitution.

15. Venue is proper pursuant to 28 U.S.C. § 1391 because this is the judicial district in which the Plaintiff resides, in which all Defendants reside, and in which the events and/or omissions giving rise to the claim occurred.

## FACTS

16. Plaintiff Jerry Wenjiu Liu was a formal finance professor at California State University who is well known for his research work. On June 4, 2009, Forbes magazine published a dedicated article "Google's Options Odyssey" reporting Liu's research on U.S. stock markets.

17. On November 4, 2020, Plaintiff moved to in Kauai, Hawai'i and has lived on the Kauai Island since November 4, 2020.

18. On December 30, 2020, Liu first discovered sea turtles coming to shore, resting on the east side of Poipu beach during evenings and nights.

19. During the winter months of years 2020 and 2021, there were life guards in the Poipu Beach east life guard tower almost every day.

20. There were multiple, clear signs on the Poipu Beach warning people not to get too close to the resting turtles. One sign clearly stated,

"15 FOOT MINIMUM DISTANCE, NO FLASH PHOTOS, NO FLASHLIGHTS"

In December 2020 or January 2021, there were often tapes creating a protective zone for the sea turtles. Based on words on these warning signs, Plaintiff believed the warning signs were set up by either Hawaii Department of Land Nature Resources (DLNR) or Kauai Fire Department.

21. Between February 2021 and May 2021, probably due to the low tide on the east side of Poipu beach, there was no life guard on the east tower of Poipu Beach. During these months, no one came to Poipu beach to build up any turtle protective zone. One of the warning signs mentioned above was almost destroyed.

22. On February 1, 2021, Liu moved into a house near Poipu beach. After that date, Liu often went to the Poipu beach in the evening to watch the turtles coming to rest. After seeing that some tourists disturb the turtles, Liu, as a formal professor, realized he need to step out to protect turtles on the Poipu Beach. Starting around early February, 2021, Liu often told visiting tourists that they should stay 10 or 15 feet away from the turtles and do not use flashlights on turtle. Liu did so solely out of his love for Hawaii's natural creatures and to protect public interest. Liu received full support from all tourists, tourists all worked together with Liu to protect the turtles.

23. Around 8:00pm on Sunday, June 13, 2021, Liu went to the Poipu beach. There were several large groups of tourists walking toward the turtle resting area from the Mariott hotel's direction. Some of them holding flash lights. Liu explained to the coming tourists that turtles are resting on the beach and they should leave 10 to 15 feet distance and turn off their lights. Most of the tourist were very happy to do so.

24. Around 8:35pm on June 13, 2021, another large group of tourists walked toward the turtles. In the dark, they were about to step on the resting turtles. As Liu politely told this group of tourists the 10-15 feet and no flash rule, one teenage boy with no shirts and looked drunk behaved violently, and he tried to seize Liu's phone. At 8:41pm, Liu called 911 to report the teenage boy's behavior. Based on Liu's phone record, the 911 call lasted 3 minutes.

25. Two police officers, Hiro Shimada ("Shimada") and Kelvin Villanueva ("Villanueva"), quickly arrived at the Poipu beach. Both of them held big flash flights and they shed lights directly on the resting turtles. They first asked Liu about the situation and then ask the other group. They ask for Liu's ID. Shimada and Villanueva took no action against the teenage boy or Liu.

26. Shimada and Villanueva shed huge lights on the turtles, then stood on the beach. Probably due to lack of knowledge on turtle protection laws, the two police officers made the following mistakes:

a. THEY ENCOURAGED PEOPLE TO SHED LIGHTS DIRECTLY ON THE RESTING TURTLES.
b. THEY ALSO ALLOWED OR ENCOURAGED TOURISTS TO GET AS CLOSE AS 3-5 FEET TO THE RESTING TURTLES.

27. At 9:13:15pm, Liu took several photos documenting Shimada and Villanuvea's failure to stop tourists from harassing turtles.

28. Liu was not happy with the two police officers. Liu kept calm and talked peacefully to Shimada and Villanueva. Liu ask their name cards.

29. Liu told Shimada and Villanueva that they should get more education on turtle protection laws. By their facial appearance, Shimada and Villanueva were visibly angry at Liu.

30. At or around 9:20pm, Liu left Poipu beach. Liu realized that the two police officers might take retaliation actions against Liu. Liu once considered avoiding the two police officers by walking to his residence via a beach trail, but Liu finally walked toward his car in the parking lot.

31. Almost at the same moment that Liu started his car, from the parking lot across the street , Shimada and Villanueva immediately started their patrol cars and followed Liu. As Liu tried to let them pass by parking on the side of the road, Shimada and Villanueva immediately turned on the lights on their patrol cars.

32. Liu parked at the first possible parking space, at the Kalapaki Joe's parking lot. The parking lot is about 800 yards from where Liu started his car.

33. Before Shimada and Villanueva stopped Liu, they had no way to know whether Liu drives a car, or if Liu drives, which car belongs to Liu. It was about 9:25pm in the evening and the environment was totally dark. The only way for Shimada and Villanuvea to stop Liu right after Liu started his car was that they were specifically stalking Liu in the parking lot.

34. Liu realized that Shimada and Villanueva were engaging in illegally retaliation against Liu's protected actions. At 9:29pm, Liu called 911. The professionally trained 911 operator listened to what was occurring, and the call lasted for 54 seconds.

35. As Shimada came close to Liu's parked car, Liu started to record with my phone. While complying with Shimada's request for driver license, insurance, etc., Liu told Shimada that "You are retaliating against me!" Villanueva also came close to Liu's car, and Liu made the statement to Villanueva "You are stalking me!"

36. In April 2021, Liu purchased a car in Los Angeles. Liu's car arrived in Kauai on May 17, 2021. By Hawaii law, Liu had one month grace period, ending on June 17, 2021, to finish all Hawaii DMV requirements. At or around 9:29pm on June 13, 2021, Liu told Shimada about this as shown in the video recorded by Liu.

37. On June 13, 2021, Liu also showed Shimada Liu's insurance card with the word, "Continuous until cancelled" (the conversation was recorded by Liu using his phone). Shimada also understood that Liu had valid insurance.

38. Shimada appeared to be even angry when he realized that he could not find any excuse to cover up his illegal retaliation. It is well known innocent people are often killed by rogue police officers. On May 25, 2020. Derek Chauvin, one of four police officers who arrived on the scene, knelt on Floyd's neck and back for 9 minutes and 29 seconds, and killed George Floyd. Shimada and Villanuvea's rogue actions occurred in a dark parking lot with no other people.

39. To prevent another George Floyd style murder from happening, Liu called 911 at 9:36PM. The 911 operator, a professionally trained police woman, did not hang up and carefully listened. When Shimada realized he was being recorded by 911, became totally mad and dragged Liu out of Liu's car, stating that Liu was abusing 911. The 911 call lasted 4 minutes.

40. Shimada handcuffed Liu, then put Liu in another police van.

41. On the way from Kalapaki Joe's parking lot in Poipu to Kauai Police headquarters, Liu watched Shimada drove above marked speed limit 14 times. At one time, Shimada was driving at 39 miles per hour ( "MPG") in a zone of 25 MPG. Although Liu warned Shimada not to drive above marked speed limits, Shimada continued to drive above speed limits, and turned off the speed meter on the police van so Liu cannot see it.

42. On June 13, 2021, Liu's new car was left abandoned in the Kalapaki Joe's parking lot. Liu happened to have about $100 cash on him. After paying the $100 bail, Liu only had about $16. Liu finally got on a shared taxi at the Lihue airport. Liu had to borrow money from another passenger. When Liu finally returned to his residence, it was almost 12:00 AM.

43. Near noon time on June 14, 2021, Liu went to KPD Chief's Office to discuss Shimada's illegal retaliation actions. A KPD senior officer, A. B. [1], who had heard from Shimada, took an attitude of covering up. A. B. yelled at Liu, "You do not have law enforcement power!"

44. On April 18, 2021, Liu visited Larsen's Beach on the North Shore of Kauai. Liu was attacked by three people although Liu never provoked them. On Larsen's Beach, Liu called 911 19 times. Kauai Police Officer Aaron E. Bandmann ("Bandmann") chose to sit inside his patrol car at the beach parking lot for about an hour, refusing to do a 5-minute walk to the beach to stop an ongoing attack. Bandmann also refused to go after two attackers after Liu told Bandman they were still on the beach.

45. Because Liu's life was threatened, on May 12, 2021, Liu filed an official complaint against Bandmann at the KPD. Liu also had extensive discussion with A.B. on KPD's failure to protect tourists at the Larsen's Beach. In the discussion, A.B. stated to Liu that he had similar view on the "nude beach" with Liu. However, much to Liu's surprise, KPD took a cover-up attitude on Bandmann and made a conclusion that Bandmann should not be disciplined. The final conclusion letter was signed by Scott P. Williamson.

46. On June 18, 2021, Liu filed an official complaint against Shimada at KPD Chief's Office. On July 14, 2021, KPD sent a letter, signed by Ginny Pia, to Liu stating,

*"After full review of the body-worn camera recordings, no supporting evidence to sustain that any act of misconduct or violations occurred on June 13, 2021 relative to your complaint was found. Therefore, no disciplinary action will be imposed."*

---

[1] The names of certain individuals will be identified only in "John Doe" fashion. A "key" regarding the names of those identified in John Doe fashion will be supplied to the attorneys for each of the Defendants upon request. In addition, at an appropriate time, Plaintiff will seek to file the "key" under seal and/or amend the complaint.

47. To make sure KPD's chief, Todd G. Raybuck, to be fully aware of the Shimada case, after June 13, 2021, Liu wrote two separate letters to Raybuck, and personally delivered them to KPD chief's office. On July 28, 2021, Chief Raybuck wrote back to Liu,

*"This is to confirm receipt of your letter dated July 26, 2021, regarding complaints filed against Officers Bandmann and Shimada. Please be advised that a follow up response is forthcoming."*

48. Fully understood that KPD were covering up their officers' rogue conduct, in June 2021, Liu visited Kauai Mayor's Office and was introduced to Kauai Police Commission (thereafter "KPC"), Liu's written complaint was forwarded to the KPC.

49. On July 23, 2021, Liu testified during KPC's open meeting. The following is Liu's statements according to the meeting minutes,

*"Mr. Liu explained that he has been on Kauai for nine (9) months and is pretty neutral to the objectivity of the Kauai Police Department. However, as a professor his encounters with the Kauai Police Department have been very bad to the point where he had to file two (2) official complaints against police officers. He believes that the main issue has to do with the training of the officers which is very bad. He also feels that KPD is covering up their lower officer's bad behavior."*

50. The meeting minutes for the July 23, 2021 KPC meeting lists 11 top leaders of KPD, who were present while Liu testified against KPD.

*"Kauai Police Department: Chief of Police Todd G. Raybuck; Chief's Secretary Gayle Kuboyama; Assistants Chief Mark Begley, Bryson Ponce and Elliott Ke; Captains Paul Applegate and Mark Ozaki; Lieutenant Darren Rose; Office of Professional Standards: Lieutenant Christian Jenkins and Sergeant Ginny Pia; and Lieutenant Darren Rose. KPD's Public Information Officer Coco Zickos;"*

51. On August 27, 2021, Liu was given three minutes to testify against KPD during KPC's August 2021 open meeting.

52. The meeting minutes for the August 27, 2021 KPC meeting lists 14 members of KPD, who were present in the meeting.

*"Kauai Police Department: Police Chief Todd Raybuck; Deputy Police Chief Stan Olsen; Assistant Chiefs Mark Begley, Elliott Ke and Bryson Ponce; Office of Professional Standards: Lt. Christian Jenkins and Sergeant Ginny Pia; Captains: Paul Applegate and Roderick Green; Lieutenant Darren Rose; Employees of the Month: Detectives Hanson Hsu and Michael Nii Jr; KPD's Public Information Officer Coco Zickos and Chief's Secretary Gayle Kuboyama."*

53. On or around May 2, 2022, on another occasion, Plaintiff had a conversation with Kristopher D. Breyer ("Breyer"), a member of KPD-OPC. Although Breyer did not attend either July or August meeting of KPC, he told Liu that he was well aware of Liu's turtle story at the Poipu Beach. Breyer's statements showed Liu's arrest by Shimada was well discussed within the leader group of KPD.

54. On the tiny island of Kauai, there are repeated interactions between members of the Police Commission and leaders of the KPD. One person who are very familiar with Kauai's legal system called group style corruption on Kauai as "incest". On October 5, 2021, KPC secretary informed Liu that both of his complaints against Shimada and Bandmann were denied by KPC.

55. Upon information and repeated interaction with high-level KPD leaders, Liu is fully aware that that KPD is a highly corrupted agency. KPD leaders including A.B. and many others hinted to Liu that he should not file any complaints against KPD officers.

56. By June 26, 2021, Liu had filed at least two official complaints against KPD officers. On July 23, 2021, Liu openly exposed KPD's extensive cover-up at KPC's open meeting. High-ranked leaders of KPD were determined to retaliate against Liu for his protected actions.

57. Although KPD leaders fully understood that natural of arrest of Liu on June 13, 2021, on July 7, 2021, KPD through Kauai Prosecuting Attorney office, filed criminal charges against Liu. This case is Hawaii Fifth Circuit 5DCW-21-000680 ("Case 680").

58. The following language were found in the complaint,

"*On or about the 13th day of June, 2021, in the County of Kaua'i, State of Hawai'i, WENJIU LIU, with reckless disregard of the risk that a public safety agency will respond by dispatching emergency services, did intentionally, knowingly, or recklessly access the telephone number 911 and made a false complaint or report of false information, thereby committing the offense of Misuse of 911 Emergency Telephone Service, a misdemeanor, in violation of Section 710-1014.5(1)(b) of the Hawaii Revised Statutes.*"

59. In Case 680, KPD and KOPA openly linked their charges against Liu to Liu's protected action of filing complaints against KPD officers. They did not even bother to hide their evil motivation of retaliation.

60. KPD and KOPA's criminal charge against Liu is a textbook example of malicious prosecution. Malicious prosecution refers to criminal charges that are maliciously filed in order to intimidate, harass, defame, or otherwise injure the other party. Malicious prosecution occurs when one party has knowingly and with malicious intent initiated baseless litigation against another party. Case 680 initiated by KPD is clearly a malicious prosecution.

61. A KPD senior officer, C. D., who extensively interacted with Liu, did his/her best to appear friendly with Liu. However, from June 2021 to June 2022, C.D. directly told Liu several times that Liu should not tell an officer that he is going to file official complaints against them. When Liu asked C.D. several time to stop Case 680 against Liu, C.D. refused to do anything.

62. From June 13, 2021 to June 13, 2022, Liu has suffered tremendous humiliation, severe mental and emotional distress, and monetary damages. Solely because Liu was doing his best to protest Hawaii's natural resource, turtles, Liu was dragged out his car, handcuffed, and taken to KPD's jail in the worst possible fashion.

63. From June 13, 2021 to June 13, 2022, Liu had to go to Kauai's Court at least once every month as a "criminal".

64. As of June 12, 2022, the Case Docket for 5DCW-21-0000680 against Liu already has 62 entries at one online page and 41 entries at another online page in Hawaii's Court System.

65. In or around January 2022, Mr. David C. Loos ("Loos") from Office of the Prosecuting Attorney, County of Kauai became actively involved in court hearing of Case 680.

66. On or around May 4, 2022, Loos stated in Case 680 court hearing that he had reviewed all evidence related to what happened on June 13, 2021, and he "fully understood what happened".

67. However, Loos continued to play out his role as an agent of the KPD, doing his best to bring pain and suffering to Liu, as a strategy for him to win Case 680.

68. On January 27, 2022, Liu filed a motion asking the Judge to throw out the malicious prosecution of Case 680. On February 27, 2022, Loos filed a motion with full of lies asking the Judge not to throw out Case 680.

69. Knowing that he could not win Case 680 before a Jury, on March 31, 2022, Loos wrote to Liu,

*"Please find attached the State's plea offer to resolve your current criminal case. Please note that this plea offer will allow your criminal charge to be reduced down to a violation, with a $200 fine. The violation of disorderly conduct is not a crime. There will be no jail with this plea offer, only the fine."*

Liu firmly rejected Loos' offer and wrote on April 6, 2022,

*"I found it insulting for you to suggest that I "admit guilty" although I did nothing wrong. As I stated in the court on April 5, 2022, I will fight to the end for the justice against KPD brutalities and corruptions, for which you, as a resident of Kauai, may also become a victim in the future. I deeply appreciate it if you could become an honest person in the following legal process and refrain from any attempt to force me to admit any "crime" that I never did."*

70. On May 31, 2022, the trial date for Case 680 was deferred to July 18, 2022.

## COUNT I

(Federal Civil Rights Violations)

71. Plaintiff re-alleges and hereby incorporates by this reference paragraphs 1 through 70 inclusive, as if set forth in full herein.

72. On May 12, 2021, Liu filed an official complaint against Bandmann at the KPD. Liu reported to KPD the evidence of public corruption on the part of Bandmann.

73. At or around 9:15pm on June 13, 2022, Liu told Shimada and Villanueva that they should get more education on turtle protection laws. Shimada and Villanueva immediately retaliated by stalking Liu and arresting Liu with no reasonable cause.

74. On June 18, 2021, Liu filed an official complaint against Shimada at KPD Chief's Office. Liu reported to KPD the evidence of public corruption on the part of Shimada.

75. On July 23, 2021, Liu testified during Kauai Police Commission's open meeting. Liu reported to KPC the evidence of public corruption on the part of Kauai Police Department.

76. On August 27, 2021, Liu was given three minutes to testify against KPD during Kauai Police Commission's open meeting. Liu reported to KPC for the second time the evidence of public corruption on the part of Kauai Police Department.

77. Liu told Shimada and Villanueva about turtle protection laws in his capacity as a public citizen. Liu also reported misconduct and violations of law in his capacity as a public citizen. Liu's actions in educating of turtle protection law and reporting misconduct and violations of the law to KPD and KPC constituted his exercise of his constitutionally protected interest in freedom of speech, constitutionally protected by the First Amendment to the Constitution of the United States. This protected speech was on a matter or matters of public concern. Thus, the speech was constitutionally protected.

78. Liu protected speech was, clearly, a direct motivating factor in Shimada's decision to arrest Liu.

79. Liu's filing of two complaints at the KPD was constitutionally protected speech. KPD and all of its leaders were fully aware of Liu's exercise of his First Amendment rights. Raybuck, Williamson, Jenkins, and Pia reacted by first denying Liu's complaint; they further retaliated against Liu by executing the malicious prosecution of Case 680 against Liu.

80. Liu's open exposure of cover-ups by the KPD leaders during the July and August 2021 KPC meetings was constitutionally protected speech. KPD and all of its leaders were angry at Liu for

exposing them to KPC. Raybuck, Williamson, Jenkins, and Pia reacted by doing their best to injure Liu with the malicious prosecution of Case 680.

81. Loos admitted that he had full knowledge of what happened on June 13, 2021. However, he insisted to bring more pain and suffering to Liu by filing several motions with nothing but lies.

82. For purposes of 42 U.S.C. §§ 1983 and 1985, Defendants County of Kauai, KPD, KOPA, Shimada, Raybuck, Williamson, Jenkins, Pia, and Loos are persons.

83. As a result of the unconstitutional deprivation of his rights by Defendants, Plaintiff has suffered brutal physical arrest, severe mental and emotional distress, monetary damages, and sever damage to Plaintiff's personal reputation.

84. The actions of Defendants were willful, wanton, malicious, and in such callous and reckless disregard of civil obligations, as to entitle Plaintiff to recover punitive damages.

85. Thus, Plaintiff is entitled to recover general, special, and punitive damages in an amount to be proven at trial.

## COUNT II

(Conspiracy to Violate Civil Rights)

86. Plaintiff realleges and hereby incorporates by this reference paragraphs 1 through 70, inclusive, as if set forth in full herein.

87. Defendants, and others, conspired to violate the civil rights of Plaintiff described more fully above, in violation of 42 U.S.C. § 1983.

88. On May 12, 2021, Liu filed an official complaint against Bandmann at the KPD. Liu reported to KPD the evidence of public corruption on the part of Bandmann. Raybuck and Williamson jointly signed a letter denying Liu's allegations although Bandmann violated his duty as a police officer.

89. On June 18, 2021, Liu filed an official complaint against Shimada at KPD Chief's Office. Liu reported to KPD the evidence of public corruption on the part of Shimada.

90. On July 23, 2021, Liu testified during Kauai Police Commission's open meeting. Liu reported to KPC the evidence of public corruption on the part of Kauai Police Department. On August 27, 2021, Liu was given three minutes to testify against KPD during Kauai Police Commission's open meeting. Liu reported to KPC for the second time the evidence of public corruption on the part of Kauai Police Department.

91. Defendants KPD Chief Raybuck, Jenkins, and Pia were all involved into the investigation of Shimada. They were all present at the July and August 2021 KPC open meetings. None of them came out to protect Liu's Constitution rights. Raybuck and Pia jointly signed a letter denying

Liu's complaint on Shimada. They used their repeated interactions with KPC members and manipulated the KPC to give an upside-down ruling.

92. KPD Chief Raybuck, Jenkins, Pia and KOPA member Loos worked as a team to inflict more damages on Liu with the malicious prosecution of Case 680.

93. As a result of the unconstitutional deprivation of her rights by Defendants, Plaintiff has suffered monetary damages, and severe mental and emotional distress.

94. The actions of Defendants were willful, wanton, malicious, and in such callous and reckless disregard of civil obligations, as to entitle Plaintiff to recover punitive damages.

95. Thus, Plaintiff is entitled to recover general, special, and punitive damages in an amount to be proven at trial.

## COUNT III

(Malicious Prosecution)

96. Plaintiff realleges and hereby incorporates by this reference paragraphs 1 through 70, inclusive, as if set forth in full herein.

97. Defendants the County, the KPD and Raybuck, Jenkins, Pia, Shimada, and Loos brought the malicious prosecution Case 680 within the meaning of *Thompson v. Clark*, decided on April 4, 2022. By prosecuting Liu with malicious intent without reasonable grounds, the Defendants committed a crime violates the Fourth Amendment right against unreasonable search and seizure. The Defendants should be punished under § 1983.

98. As a result of the Malicious Prosecution by Defendants, Plaintiff has suffered severe mental and emotional distress, and monetary damages.

99. The actions of Defendants were willful, wanton, malicious, and in such callous and reckless disregard of civil obligations, as to entitle Plaintiff to recover punitive damages.

100. Thus, Plaintiff is entitled to recover general, special, and punitive damages in an amount to be proven at trial.

## COUNT VI

(Employer negligence in supervision/retention of employee)

101. Plaintiff realleges and hereby incorporates by this reference paragraphs 1 through 70, inclusive, as if set forth in full herein.

102. Defendants Chief Raybuck, the KPD and the County were negligent in their supervision and retention of Shimada within the meaning of Abraham v. S.E. Onorato Garages, 50 Haw. 628 (1968) and other cases. This negligence is the proximate cause of Plaintiff's injuries.

103. Defendants Chief Raybuck, the KPD and the County knew or should have known of the necessity and opportunity for exercising control over Shimada. KPD, the County, and Chiefs Raybuck had clear notice of Shimada's dangerousness, and failed to ensure that the KPD Standards of Conduct were met. Therefore, the harm caused to Plaintiff by Shimada was foreseeable. The harm includes mental anguish, wage loss, and other damages.

104. Defendants Chief Raybuck, the KPD and the County acted, and/or refused to act, wantonly and recklessly, and they disregarded the probable consequences to the general public by Officer Shimada.

105. Thus, as a result of the Defendants' conduct as above described, Plaintiff is entitled to recover general, special, and punitive damages in an amount to be proven at trial.

## COUNT V

(Intentional infliction of emotional distress)

106. Plaintiff realleges and hereby incorporates by this reference paragraphs 1 through 70, inclusive, as if set forth in full herein.

107. The actions of Defendants, as set forth above, were intentional and unreasonable. Defendants did or should have realized that their actions would likely cause emotional distress. The conduct alleged herein was malicious, reckless, beyond the bounds of conduct recognized as appropriate by society, and extreme and outrageous, so as to render Defendants liable for the tort of intentional infliction of emotional distress.

108. As a result of these actions by Defendants, Plaintiff has suffered severe mental anguish and emotional distress, and monetary damages.

109. The actions of Defendants were willful, wanton, malicious, and in such callous and reckless disregard of civil obligations, as to entitle Plaintiff to recover punitive damages.

110. Thus, Plaintiff is entitled to recover general, special, and punitive damages in an amount to be proven at trial.

## COUNT VI

(Negligent infliction of emotional distress)

111. Plaintiff realleges and hereby incorporates by this reference paragraphs 1 through 70, inclusive, as if set forth in full herein.

112. The actions of Defendants, as set forth above, were negligent and foreseeable and resulted in physical harm to Plaintiff, and were a legal cause of injury to Plaintiff.

113. As a result of these actions by Defendants, Plaintiff has suffered brutal dragging, handcuffing, and other physical, verbal abuse by Shimada.

114. As a result of these actions by Defendants, Plaintiff has suffered monetary damages, physical harm and mental anguish and emotional distress with which a reasonable person of normal mental health could not cope.

115. Thus, Plaintiff is entitled to recover general, special, and punitive damages in an amount to be proven at trial.

## COUNT VII

(Violation of Rights Secured to Plaintiff

Pursuant to the Constitution of the State of Hawaii)

116. Plaintiff realleges and hereby incorporates by this reference paragraphs 1 through 70, inclusive, as if set forth in full herein.

117. The actions of Defendants as set forth above, violated Plaintiff's rights secured to him by the Constitution of the state of Hawai'i, including, but not limited to, rights to freedom of speech, due process of law, equal protection of the law, and the enjoyment of his civil rights.

118. As a result of the unconstitutional deprivation of his rights by Defendants, Plaintiff has suffered severe mental, emotional distress, and monetary damages.

119. The actions of Defendants were willful, wanton, malicious, and in such callous and reckless disregard of civil obligations, as to entitle Plaintiff to recover punitive damages.

120. Thus, Plaintiff is entitled to recover general, special, and punitive damages in an amount to be proven at trial.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered as follows:

(1) Pursuant to 28 U.S.C. § 1343, and 42 U.S.C. §§ 1983, 1985 & 1988, for an injunction against Defendants barring them from continuing their illegal activities, and their continuing deprivation of Plaintiff's civil rights, for an injunction barring Defendants from retaliating against Plaintiff, for general, special, and punitive damages in an amount to be proven at trial, for costs and attorneys' fees, and for such other and further relief as the Court deems just and proper;

(2) Pursuant to Haw. Rev. Stat. §§ 378-63, appropriate injunctive relief and actual damages as therein defined, for costs and attorneys' fees, and such other and further relief as the Court deems just and proper; and

(3) Pursuant to all other claims and causes of action, appropriate injunctive and declaratory relief, including the injunctive and declaratory relief described above, general, special, and punitive damages in an amount to be proven at trial, attorneys' fees and costs, and such other and further relief as the Court deems just and proper.

Dated : Honolulu, Hawai'i, June 12, 2022,

Wenjiu Liu

Wenjiu Liu