UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| WENJIU LIU,<br><br>            Plaintiff,<br><br>     vs.<br><br>COUNTY OF KAUAI,  KAUAI POLICE<br>DEPARTMENT,  KAUAI OFFICE OF THE<br>PROSECUTING ATTORNEY, HIRO<br>SHIMADA, TODD G. RAYBUCK, SCOTT<br>P. WILLIAMSON, CHRISTIAN<br>JENKINS, GINNY PIA, DAVID C.<br>LOOS,<br><br>            Defendants. | CIV. NO. 22-00269 LEK-WRP |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT
COUNTY OF KAUAI'S MOTION TO DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT FILED ON DECEMBER 4, 2023 [DKT. NO. 51]**

Before the Court is Defendant County of Kauai's ("the County") Motion to Dismiss Plaintiff's Second Amended Complaint Filed on December 4, 2023 [Dkt. No. 51] ("Motion"), filed on December 18, 2023. [Dkt. no. 55.] Pro se Plaintiff Wenjiu Liu ("Liu") filed "Plaintiff's Reply to Defendants' Answer and Affirmative Defenses" and a memorandum in support on January 2, 2024. [Dkt. nos. 57, 58.] Later that day, Liu filed a corrected Reply to Defendants' Answer and Affirmative Defenses and a Corrected Memo in Support of Plaintiff's Reply to Defendants' Answer and Affirmative Defenses. [Dkt. nos. 63, 64.] Because Liu is proceeding pro se, his filings must be liberally construed.

See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). The Court liberally construes Liu's Corrected Memo in Support of Plaintiff's Reply to Answer and Affirmative Defense as his memorandum in opposition to the County's Motion. The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules"). For the reasons set forth below, the Motion is granted in part and denied in part. The Motion is granted insofar as Liu's claims against the County in Counts I, II, III and IV are dismissed with prejudice, and the Motion is denied as to his claims against the County in Counts V and VI.

## BACKGROUND

Liu filed his Complaint on June 13, 2022. [Dkt. no. 1.] The County and then-Defendants Kaua`i Police Department ("KPD") and Kaua`i Office of the Prosecuting Attorney ("KOPA" and all collectively "County Defendants") filed a motion to dismiss on June 29, 2022. [Dkt. no. 6.] On December 29, 2022, this Court: dismissed Liu's claims against KPS and KOPA with prejudice; and dismissed Counts I, II, III, IV, V, VI against the County without prejudice. See Order: Granting the County Defendants' Motion to Dismiss Plaintiff's Complaint Filed on June 13, 2022 [ECF 1]; and Granting in Part and Denying in Part the Individual Defendants' Motion to Dismiss Plaintiff's

2

Complaint Filed on June 13, 2022 [ECF 1], filed 12/29/22 (dkt. no. 21) ("12/29/22 Order"), at 18.[1] Liu filed his First Amended Complaint on February 27, 2023. [Dkt. no. 25.] On March 7, 2023, the County moved to strike, or in the alternative, to dismiss in part, Liu's First Amended Complaint. [Dkt. no. 33.] On March 9, 2023, the Court issued an entering order denying the request to strike the First Amended Complaint. [Dkt. no. 34.] On June 2, 2023, the Court issued an entering order and granted in part and denied in part the request to dismiss the First Amended Complaint. Liu's claims in the County were dismissed without prejudice. [Dkt. no. 37.] On December 4, 2023, Liu filed his Second Amended Complaint. [Dkt. no. 51.]

The case arises from a June 13, 2021 incident at Po`ipū Beach on Kaua`i where Liu allegedly confronted a group of tourists in an effort to prevent sea turtles from being disturbed. [Second Amended Complaint at ¶¶ 24-26.] Two KPD officers arrived thereafter, Defendant Hiro Shimada ("Shimada") and Kelvin Villanueva ("Villanueva"), and allegedly took no action against the group and encouraged the group to shine lights on the turtles and approach the turtles to between three to five feet. [Id. at ¶¶ 27, 33-34.] Liu alleges he told Shimada and Villanueva that they should educate themselves on turtle

_____

[1] The 12/29/22 Order is also available at 2022 WL 17988717.

protection laws, and that the officers appeared angry at Liu. [Id. at ¶ 37.] Liu left the beach in his car, and he was subsequently pulled over by Shimada and Villanueva. [Id. at ¶¶ 38-41.]

Liu called 911 twice while he was pulled over. See id. at ¶¶ 43, 49. After realizing that the traffic stop was being recorded by the 911 phone call, Shimada allegedly "dragged Liu out of Liu's car, stating that Liu was abusing 911," and "forcefully handcuffed Liu" an put him in a police van. [Id. at ¶¶ 50-51.] Liu alleges he suffered cuts and bruises from the dragging and handcuffing. [Id. at ¶ 52.] Shimada took him to KPD headquarters. [Id. at ¶¶ 56-58.] Liu alleges he posted bail and returned home later that same day. [Id. at ¶¶ 64-66.]

The next day, "Liu went to KPD Chief's Office to discuss Shimada's illegal retaliation actions." [Id. at ¶ 67.] A KPD senior officer who Liu refers to as "A.B." allegedly told Liu that Liu "'[did] not have law enforcement power[.]'" [Id. at ¶ 69 (emphasis omitted).]

Liu had previously interacted with KPD. On April 18, 2021, "Liu visited Larsen's Beach on the North Shore of Kauai." [Id. at ¶ 70.] Liu was allegedly attacked by three individuals and Liu called 911 nineteen times. Liu asserts KPD Officer Aaron E. Bandmann ("Bandmann") refused to assist him, although Bandmann was in his patrol car which was a five-minute walk from

4

the beach where the attack occurred. Liu alleges he told
Bandmann that two of the attackers were still on the beach, but
Bandmann refused to investigate. [Id.] On May 12, 2021, Liu
filed a complaint with KPD against Bandmann. [Id. at ¶ 71.] Liu
received a letter, signed by a member of KPD's Office of
Professional Standards ("KPD-OPS"), Defendant Scott P.
Williamson ("Williamson"), regarding the decision to not
discipline Bandmann. [Id. at ¶¶ 4, 71.]

On June 18, 2021, Liu alleges he filed a public
complaint against Shimada with KPD. [Id. at ¶ 72.] Liu also
alleges KPD sent Liu a letter on July 14, 2021 from  KPD-OPS
member, Defendant Ginny Pia ("Pia"), stating that, after review
of body camera footage, there was no evidence to support Liu's
complaint, and no disciplinary action would be imposed. [Id. at
¶¶ 6, 72.] Liu also alleges he wrote two letters to Defendant
Todd G. Raybuck ("Raybuck"), KPD's Chief of Police, concerning
Shimada on June 13, 2021. [Id. at ¶ 73.] Liu received
confirmation that the letters were received. [Id. at ¶ 74.] Liu
alleges he testified at the July 23, 2021 and August 27, 2021
Kauai Police Commission ("KPC") open meetings, at which Raybuck,
Pia, and Defendant Christian Jenkins, a KPD-OPS member, were
present. [Id. at ¶¶ 5, 76-79.] On October 5, 2021, Liu was
informed that his complaints against Shimada and Bandmann were
denied. [Id. at ¶ 85.]

Liu was charged with misuse of 911 emergency telephone service on July 7, 2021. [Id. at ¶¶ 88-89.] Liu alleges Defendant David C. Loos ("Loos"), a Deputy Prosecuting Attorney with KOPA, became involved with the case in January 2022. [Id. at ¶¶ 7,97.] Liu alleges Loos filed a motion on February 27, 2022 that was "full of lies asking the Judge not to throw out" the criminal case against Liu. [Id. at ¶ 100.] Liu alleges that the State of Hawai`i Fifth Circuit Court granted the County Prosecutor's Office's ex parte motion to dismiss the criminal case against Liu with prejudice on June 30, 2022. [Id. at ¶¶ 103-05.]

In the Second Amended Complaint, Liu alleges the following claims against the County: (1) a Title 42 United States Code Section 1983 claim alleging violation of Liu's First Amendment rights under the United States Constitution ("Count I"); (2) conspiracy to violate Liu's civil rights, in violation of Section 1983 and 42 United States Code Section 1985 ("Count II"); (3) malicious prosecution ("Count III"); (4) negligent supervision and/or retention ("Count IV"); (5) intentional infliction of emotional distress ("IIED" and "Count V"); and (6) negligent infliction of emotional distress ("NIED" and "Count VI"). See id. at ¶¶ 121-89. The County seeks dismissal of all of Liu's claims against it, without leave to amend, on the ground that Liu has failed to cure the

6

deficiencies in his claims that this Court previously identified in its 12/29/22 Order, and Liu has not stated plausible claims upon which relief can be granted. [Motion, Mem. in Supp. at 14.] While the Motion seeks dismissal of all claims against the County, the County only presents arguments as to Counts I-IV. [Id. at 2-14.]

**DISCUSSION**

## I.  **Count I**

Liu brings a claim against the County for a violation of his First Amendment right to freedom of speech. See Second Amended Complaint at ¶¶ 128, 131, 135. Specifically, Liu alleges his "actions in educating [Shimada and Villanueva] of turtle protection law and reporting misconduct and violations of the law . . . constituted his exercise of his constitutionally protected interest in freedom of speech," [id. at ¶ 128,] for which Liu was retaliated against by Liu's arrest, [id. at ¶ 137,] the denial of Liu's two complaints, [id. at ¶ 132,] and by subsequent criminal charges, [id. at ¶ 135]. Additionally, Liu alleges his filing of two complaints was constitutionally protected speech, for which Liu was retaliated against. [Id. at ¶ 132.]

A local government is liable for a under Section 1983 when "action pursuant to official municipal policy of some nature caused a constitutional tort." Monell v. Dep't of Soc.

7

Servs. of N.Y.C., 436 U.S. 658, 691 (1978). To sufficiently allege a claim pursuant to Monell, Liu must plead "that (1) [he] was deprived of a constitutional right; (2) the County had a policy; (3) the policy amounted to a deliberate indifference to [his] constitutional right; and (4) the policy was the moving force behind the constitutional violation." See Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1110-11 (9th Cir. 2001) (citation and internal quotation marks omitted).

> There are three ways to show a policy or custom of a municipality: (1) by showing a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity; (2) by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate. . . .

Menotti v. City of Seattle, 409 F.3d 1113, 1147 (9th Cir. 2005) (some internal quotation marks omitted).

> Plaintiff need not "exhaustively detail the County's alleged policies at the pleadings, but he must plausibly illustrate that policies or customs of some sort exist." Jones v. Cnty. of San Mateo, 2021 WL 6049913, at *4 (N.D. Cal. Dec. 21, 2021). "[P]laintiff must plead what [he] knows — whether it is a number of incidents or some other evidence — that renders plausible [his] conclusion that there is a policy, custom, or practice in place." Griego v. City of Albuquerque, 100 F. Supp. 3d 1192, 1216 (D.N.M.

> 2015). "The expectation is that [Plaintiff] must
> tell the Court at the outset, in the complaint,
> (i) why [he] thinks a policy exists — alleging
> specific facts; and (ii) what [he] thinks the
> policy is. The Court will then decide whether (i)
> plausibly suggests (ii)." Id. . . .

Powell v. Hawai`i, CIV. NO. 23-00005 JAO-RT, 2023 WL 4405638, at

*7 (D. Hawai`i July 7, 2023) (some alterations in Powell).

In the 12/29/22 Order, this Court determined Liu

failed to allege an official policy or custom. [12/29/22 Order

at 8.] Liberally construing Liu's Second Amended Complaint, Liu

does not plausibly allege the County has a formal policy or

custom of restricting individual's freedom of speech. Liu does

not allege an official policy, so Liu must allege that there is

a long-standing informal practice or custom, that an official

with final policymaking authority ratified the decision of a

subordinate, or that an official with final policymaking

authority committed the actions that fairly represent official

policy. See Menotti, 409 F.3d at 1147.

Although Liu alleges in a conclusory manner that KPD

has a "policy and practice" of covering up police misconduct and

retaliating against anyone who exposes police misconduct, see

Second Amended Complaint at ¶ 68, Liu fails to support this

conclusory allegation with factual allegations. The Second

Amended Complaint contains the new allegation that:

> Kauai Police Department has a policy and practice
> of covering up police misconducts, and a policy

> of retaliating anyone who exposes police
> misconducts. Two recent news stories also show
> the corrupted culture of the Kauai Police
> Department. In November 2020, An assistant chief
> of police in Kauai settled a lawsuit against his
> department and Kauai County for $1.84 million. In
> August 2021, A Kauai police captain sued Kauai
> Police Chief Raybuck alleging he was passed over
> for a promotion because of his race and then
> retaliated against for filing a discrimination
> complaint. The complaint resulted in a two-week
> suspension for the chief. There is no question
> that Kauai Police Department is highly corrupt
> and has a custom of covering up police misconduct
> and imposing illegal retaliations.

[Id.] Liu's allegations regarding a settlement with KPD and the

County do not relate to the underlying constitutional violation

alleged in the instant case and are therefore irrelevant to

alleging a "policy" of restricting individuals' speech.

The only allegations supporting Liu's claim of a First

Amendment violation are: (1) a KPD officer was passed over for a

promotion and retaliated against for filing a discrimination

complaint; and (2) Liu was retaliated against for telling

officers to educate themselves on June 13, 2021 and for filing

complaints. These two allegations alone are insufficient to

demonstrate a long-standing custom of restricting an

individual's speech. "[T]wo incidents are insufficient to

establish a custom or practice for purposes of Monell

liability." Slama v. City of Madera, No. 1:08-cv-810 AWI GSA,

2012 WL 1067198, at *3 (E.D. Cal. Mar. 28, 2012) (citing Trevino

v. Gates, 99 F.3d 911, 918 (9th Cir. 1996); Meehan v. County of

Los Angeles, 856 F.2d 102, 106-07 (9th Cir. 1998); Bradford v. City of Seattle, 557 F. Supp. 2d 1189, 1203 (W.D. Wash. 2008)). Therefore, Liu fails to plausibly allege that KPD has a custom of restricting individual's right to free speech.

Liu's allegations that a final policymaker committed or ratified the alleged constitutional violation fare no better. Liu alleges that Raybuck "is the final policy maker who ordered taking retaliating actions against Liu by drawing upside-down conclusions on Liu's complaints, and issuing a criminal charge against Liu." [Second Amended Complaint at ¶ 135.] First, as to rejecting Liu's complaints against Shimada and Bandmann, Liu's allegations are contradictory. Liu alleges that Pia and Raybuck signed letters rejecting Liu's complaints against Bandmann and Shimada. [Id. at ¶ 116.] However, Liu also alleges that Williamson signed the letter denying Liu's complaint against Bandmann, [id. at ¶ 71,] and Pia signed the letter denying Liu's Complaint against Shimada, [id. at ¶ 72]. Liu also alleges that, at a different time, a KPC secretary informed him that KPC denied both complaints. [Id. at ¶ 85.] Liu elsewhere alleges Raybuck simply "knew" of Liu's complaints. [Id. at ¶ 81.]

Regardless, even if Raybuck is the final policymaker under state law regarding the discipline of KPD officers, rejecting Liu's complaint of Shimada'a alleged retaliatory

action on June 13, 2021 is insufficient to allege <u>Monell</u>

liability.

> The mere failure to discipline [officers] does
> not amount to ratification of their allegedly
> unconstitutional actions. <u>See</u> <u>Clouthier v. Cnty.</u>
> <u>of Contra Costa</u>, 591 F.3d 1232, 1253-54 (9th Cir.
> 2010) (holding that the failure to discipline
> employees, without more, was insufficient to
> establish ratification);[2] <u>Santiago v. Fenton</u>,
> 891 F.2d 373, 382 (1st Cir. 1989) (refusing to
> hold that the "failure of a police department to
> discipline in a specific instance is an adequate
> basis for municipal liability under <u>Monell</u>").

<u>Sheehan v. City & Cnty. of San Francisco</u>, 743 F.3d 1211, 1231

(9th Cir. 2014), *rev'd in part on other grounds, cert. dismissed*

*in part* 575 U.S. 600 (2015).

Second, Raybuck is not the final policymaker under

state law as to the decision whether to initiate criminal

charges against Liu. <u>See</u> <u>Andrade v. Darren Cho</u>, CIV. NO. 16-

00684 DKW-KJM, 2017 WL 3723632, at *2 (D. Hawai`i Aug. 29, 2017)

("As a police officer and not a prosecutor, however, Officer Cho

did not charge Andrade with anything and could not have."). Nor

has Liu alleged that a prosecutor was the final decision maker

---

[2] <u>Clouthier</u> was overruled "to the extent that it identified
a single deliberate indifference standard for all § 1983 claims
and to the extent that it required a plaintiff to prove an
individual defendant's subjective intent to punish in the
context of a pretrial detainee's failure-to-protect claim."
<u>Castro v. Cnty. of Los Angeles</u>, 833 F.3d 1060, 1070 (9th Cir.
2016).

in bringing criminal charges against Liu. <u>See generally</u> Second
Amended Complaint.

      Liu therefore fails to state a plausible claim that
the County is liable for a deprivation of his First Amendment
rights. Liu's claim against the County in Count I is dismissed.

## II. <u>Count II</u>

      Count II alleges there was a conspiracy to commit the
violations of Liu's constitutional rights described in Count I.
Because Count I does not plausibly allege a constitutional
violation by the County, Liu's conspiracy claim against the
County must fail. <u>See, e.g.</u>, <u>Davis v. Powell</u>, 901 F. Supp. 2d
1196, 1217 (S.D. Cal. 2012) ("To state a conspiracy claim under
§ 1983, a plaintiff must show (1) an agreement between the
defendants to deprive the plaintiff of a constitutional right,
(2) an overt act in furtherance of the conspiracy, and (3) a
constitutional deprivation." (some citations omitted) (citing
<u>Gilbrook v. City of Westminster</u>, 177 F.3d 839, 856-57 (9th Cir.
1999))). Liu's claim against the County in Count II is therefore
dismissed.

## III. <u>Count III</u>

      Liu alleges he was maliciously prosecuted when he was
charged with misuse of the 911 emergency telephone service. <u>See</u>
Second Amended Complaint at ¶¶ 152-53, 157. Specifically, Liu
alleges: "By prosecuting Liu with malicious intent without

reasonable grounds, the County and individual defendants
Raybuck, Pia, Shimada, and Loos, committed a crime violates
[sic] the Fourth Amendment right against unreasonable search and
seizure." [Id. at ¶ 157.] The Second Amended Complaint also
alleges that Chief Raybuck was "the final policy maker who
ordered taking retaliating actions against Liu by . . . issuing
a 'criminal charge' against Liu," [id. at ¶ 81 (emphasis
omitted),] and that "Raybuck, Williamson, Jenkins, and Pia were
driving forces of the malicious prosecution" of Liu. Id. at
¶ 119, see also id. at ¶ 114 (alleging Shimada "instigated" the
arrest and malicious prosecution of Liu).

A malicious prosecution claim under Hawai`i law
requires that "(1) the prior proceedings must have been
terminated in the plaintiff's favor; (2) the prior proceedings
must have been initiated without probable cause; and (3) the
prior proceedings must have been initiated with malice." Wong v.
Cayetano, 111 Hawai`i 462, 478, 143 P.3d 1, 17 (2006) (citation
omitted). Further, "a malicious prosecution claim requires more
detailed factual allegations regarding the Defendant Officers'
involvement in the decision to prosecute . . . , beyond the
conclusory assertion that they caused the initiation of false
charges to be filed." Stubblefield v. City of Novato, Case No.
15-cv-03372-JCS, 2016 WL 192539, at *6 (N.D. Cal. Jan. 15, 2016)
(citation and internal quotation marks omitted).

14

Liu fails to plead any factual matter from which this
Court could reasonably infer the County is liable for the harm
alleged. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("A
claim has facial plausibility when the plaintiff pleads factual
content that allows the court to draw the reasonable inference
that the defendant is liable for the misconduct alleged."
(citation omitted)). Instead, the Second Amended Complaint only
presents "naked assertions devoid of further factual
enhancement" that Raybuck, Shimada, Williamson, Jenkins and Pia
were the "driving forces" of, or "instigated," Liu's
prosecution. See id. (brackets, citation, and internal quotation
marks omitted); Second Amended Complaint at ¶¶ 114, 119. These
allegations are insufficient to meet the well-settled pleading
standard required by Iqbal, and presents only conclusory
statements which need not be accepted as true. See Iqbal, 556
U.S. at 678 ("[a]lthough for the purposes of a motion to dismiss
we must take all of the factual allegations in the complaint as
true, we are not bound to accept as true a legal conclusion
couched as a factual allegation" (citation and internal
quotation marks omitted)).

Excluding these conclusory statements, the only other
allegations of malicious prosecution remaining regard Loos, who
Liu alleges "filed a motion with full [sic] of lies asking the
Judge not to throw out" the criminal case against Liu. [Second

15

Amended Complaint at ¶ 100.] However, Liu alleges that Loos became involved with the prosecution six months after the criminal complaint was filed. See id. at ¶ 97. Because Liu did not allege Loos was involved with the initiation of the criminal proceedings, Liu has not alleged sufficient facts to assert a plausible malicious prosecution claim against the County. Because the Second Amended Complaint does not allege sufficient factual matter for this Court to reasonably infer the County is liable for malicious prosecution, Liu's claim against the County in Count III must be dismissed.

## IV.   **Count IV**

The Court has liberally construed Liu's negligent supervision claim as being brought under state law and Section 1983. See 12/29/22 Order at 11. This Court previously dismissed Liu's claim against the County in Count IV because Liu failed to plead the County acted with deliberate indifference under Section 1983, and because Liu failed to allege sufficient factual allegations to support a finding of foreseeability under state law. [Id. at 11-12.] These defects persist in the Second Amended Complaint.

First, as to Liu's negligent supervision claim under Section 1983, Liu has not plausibly alleged the County acted with deliberate indifference. "[A] constitutional violation may arise from training or supervision where the training or

16

supervision is sufficiently inadequate as to constitute 'deliberate indifference' to the righ[t]s of persons with whom the police come into contact." Davis v. City of Ellensburg, 869 F.2d 1230, 1235 (9th Cir. 1989) (quoting City of Canton v. Harris, --- U.S. ----, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)).[3] "Mere negligence in training or supervision, however, does not give rise to" municipal liability. Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011) (citation omitted). Rather,

> the standard we apply is even higher than gross negligence — deliberate indifference requires a culpable mental state. [L.W. v. Grubbs, 92 F.3d 894, 898-900 (9th Cir. 1996).] The state actor must "recognize[] [an] unreasonable risk and actually intend[] to expose the plaintiff to such risks without regard to the consequences to the plaintiff." Id. at 899 (internal quotation omitted). In other words, the defendant "knows that something **is** going to happen but ignores the risk and exposes [the plaintiff] to it." Id. at 900.

Patel v. Kent Sch. Dist., 648 F.3d 965, 974 (9th Cir. 2011) (emphasis and some alterations in Patel). To successfully allege deliberate indifference, Liu must allege that the County "was on actual or constructive notice that this failure to supervise

---

[3] Davis was overruled on other grounds by Beck v. City of Upland, 527 F.3d 853 (9th Cir. 2008). See, e.g., Linarez-Rodriguez v. Honea, No. 2:22-cv-1692 KJN P, 2022 WL 17362914, at *4 (E.D. Cal. Dec. 1, 2022).

would likely result in a constitutional violation." <u>See</u> <u>Jackson</u> <u>v. Barnes</u>, 749 F.3d 755, 763 (9th Cir. 2014).

It is unclear what constitutional violation Liu is alleging as the subject of this Section 1983 claim. However, liberally construed, Liu appears to be alleging Shimada caused him bodily injury during his arrest. Liu alleges he suffered cuts and bruises during the arrest from the handcuffing. <u>See</u> Second Amended Complaint at ¶¶ 51-52.

Liu had previously alleged that "KPD, the County, and Chief[] Raybuck had clear notice of Shimada's dangerousness," [Complaint at ¶ 103,] and in the Second Amended Complaint Liu adds that the KPD and Raybuck "received many complaints against Shimada[.]" [Second Amended Complaint at ¶ 167.] Liu also adds the allegation that "Shimada is well known in the Kauai Community to be a police officer who repeatedly abuses his police power," [<u>id.</u> at ¶ 164,] and provided two examples in addition to Shimada's actions at Poʻipū Beach on June 13, 2021:

-"[b]efore June 13, 2021, Liu already had another encounter with
    Shimada, in which case Shimada abused his police power and
    refused to take act [sic] to a young female violating
    parking laws"; [<u>id.</u> at ¶ 165;] and

-"Shimada also engaged in police brutality and beat up another
    Kauai resident," [<u>id.</u> at ¶ 166].

Liu's additional allegations in the Second Amended Complaint do not save Count IV from the defect identified in the 12/29/22 Order. First, the allegation about refusing to act adversely against an individual for violating parking laws does not amount to misconduct, and is utterly irrelevant to Shimada allegedly engaging in physical violence. The second allegation of Shimada beating up a resident is relevant to Liu's allegations of physical violence, however, Liu has failed to allege that Raybuck was aware of this incident. While Liu has alleged KPD was on notice of Shimada's misconduct through complaints, Liu does not allege what type of misconduct was at issue in these complaints. Because Liu has not identified what kind of conduct Shimada engaged in that KPD was aware of, Liu has not sufficiently alleged deliberate indifference. Here, Liu has not alleged that the need to supervise Shimada was "so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." See City of Canton, 489 U.S. at 390. Liu has not sufficiently alleged that the County "was on actual or constructive notice that this failure to supervise would likely result in a constitutional violation." See Jackson, 749 F.3d at 763. Rather, Liu only alleges the County and Raybuck "were **negligent** in their supervision and retention of Shimada" – not

that they were deliberately indifferent. See Second Amended
Complaint at ¶ 162 (emphasis added).

For the same reasons, Liu has not sufficiently alleged
foreseeability under state law. In Hawai`i, a negligent
supervision claim "require[s] the plaintiff to establish
foreseeability, i.e., 'that the employer knew or should have
known of the necessity and opportunity for exercising such
control,'" as well as the elements of a traditional negligence
claim. Howard v. Hertz Corp., Civil No. 13-00645 SOM/KSC, 2014
WL 5431168, at *4 (D. Hawai`i Oct. 23, 2014) (citing Otani v.
City & Cnty. of Haw., 126 F. Supp. 2d 1299, 1308 (D. Hawai`i
1998) (quoting Abraham v. S.E. Onorato Garages, 50 Haw. 628, 639
(1968))). "The key to a negligent training and/or supervision
claim is foreseeability." Park v. City & Cnty. of Honolulu, 292
F. Supp. 3d 1080, 1102 (D. Hawai`i 2018) (citation omitted).
"'If an employer has not been put on notice of the necessity for
exercising a greater degree of control or supervision over a
particular employee, the employer cannot be held liable as a
matter of law.'" Id.

Accordingly, the Court concludes that Liu fails to
plausibly allege a negligent supervision claim against the
County under Section 1983 or state law. Liu's claim against the
County in Count IV is therefore dismissed.

## V.   <u>No Leave to Amend Counts I, II, III and IV</u>

Having afforded Liu two opportunities to amend

Counts I, II, III and IV, it is clear further amendment would be

futile. "Although leave to amend should be given freely, denying

leave is not an abuse of discretion if it is clear that granting

leave to amend would have been futile." <u>Lathus v. City of</u>

<u>Huntington Beach</u>, 56 F.4th 1238, 1243 (9th Cir. 2023) (citations

and internal quotation marks omitted). Dismissal of Liu's claims

against the County in Counts I, II, III, and IV is therefore

with prejudice.

## VI.  <u>Remaining Claims</u>

The County did not make any arguments regarding

Counts V and VI in its Motion. <u>See generally</u>, Motion, Mem in

Supp. Therefore, Counts V and VI remain against the County.

<u><strong>CONCLUSION</strong></u>

On the basis of the foregoing, the County's Motion to

Dismiss Plaintiff's Second Amended Complaint Filed on

December 4, 2023 [Dkt. No. 51], filed December 18, 2023 is

HEREBY GRANTED IN PART AND DENIED IN PART. The Motion is GRANTED

to the extent that Liu's claims against the County in Counts I,

II, III, and IV are DISMISSED WITH PREJUDICE. The Motion is

DENIED insofar as Liu's claims against the County in Counts V

and VI remain.

IT IS SO ORDERED.

21

DATED AT HONOLULU, HAWAII, March 6, 2024.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

<u>**WENJIU LIU VS. COUNTY OF KAUAI, ET AL**</u>**; CV 22-00269 LEK-WRP; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT COUNTY OF KAUAI'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FILED ON DECEMBER 4, 2023 [DKT. NO. 51]**